UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

MICHAEL DUVALL                          CIVIL ACTION

v.                                      NO. 15-2404

BOPCO, L.P., ET AL.                     SECTION "F"

<u>ORDER AND REASONS</u>

Before the Court are BOPCO, L.P.'s partial motions to dismiss plaintiff's second and third supplemental and amending complaints under Rule 12(b)(6).  For the reasons that follow, the motions are GRANTED in part and DENIED in part.

**Background**

This is a personal injury case. In his work as a coil tubing operator for Pioneer Coiled Tubing Services, LLC, Michael Duvall's right hand was crushed as he was unloading a spud barge, the T.T.I.-1, owned and operated by BOPCO, L.P. BOPCO contracted with Pro-Tow Marine, L.L.C. to provide a tow boat and personnel to equip and transport the barge for work on oil and gas production wells. BOPCO also contracted with Eagle Consulting, L.L.C. to provide a supervisor for the barge or well repair operations.

The mechanics of the February 10, 2015 accident are alleged in the complaint as follows.  Legs of the barge are raised and lowered by two hydraulic lift motors and cables attached to the two legs of the barge, which are all permanently affixed to the barge owned and

1

maintained by BOPCO. Legs are raised and locked by inserting a large iron pin into a hole on each leg, with the pin resting on the leg's outer casing once the leg is lowered into place. The hydraulic lift motors are operated from a control panel centered between the two legs of the barge, approximately 20 feet from each leg.

While Duvall and two Pioneer co-workers were attaching hoses to the split skid pump on the deck of the barge, Clifton Gaines, a Pro-Tow Marine employee, asked Duvall to assist him with raising and setting one leg of the barge by inserting the pin into the leg once the operator of the lift motor raised the leg to set it into place. Once Gaines raised the vessel leg to its desired height through the use of the vessel's affixed hydraulic lift motor, Duvall began to insert the iron pin into the hole of the leg when the lift motor suddenly released, causing the vessel leg to drop in a free-fall fashion. The sudden dropping of the vessel leg crushed Duvall's right hand between the iron pin and the iron edge of the leg's outer casing, crushing his right index finger and middle finger, ultimately necessitating partial amputation of his index finger and causing residual impairments and disabilities to his index and middle finger.

On June 30, 2015, Mr. Duvall sued BOPCO, Pro-Tow Marine, and Eagle Consulting, seeking to recover in excess of $500,000 for a variety of alleged negligent acts and violations of general maritime law and Louisiana law. As against BOPCO, the vessel owner,

Mr. Duvall also seeks to recover under the Longshore and Harbor Worker's Compensation Act, 33 U.S.C. § 905(b). Shortly after filing his initial complaint, Duvall filed a first supplemental and amending complaint against BOPCO. In response, BOPCO filed a partial motion to dismiss 11 of Duvall's claims under 12(b)(6) on the ground that Duvall's exclusive remedy against BOPCO, the vessel owner, is under Section 905(b) of the Longshore and Harbor Worker's Compensation Act. While BOPCO's original motion was before the Court, Duvall filed a second and then a third supplemental and amending complaint in which he withdrew some claims and reasserted and re-styled others.   The Court thus denied BOPCO's original motion in part as moot (as to the claims withdrawn by the plaintiff) and in part without prejudice (as to the claims pursued or restyled in the plaintiff's second and third amended complaints). BOPCO now seeks to dismiss some of the plaintiff's claims alleged in the plaintiff's second and third supplemental complaints.

I.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Such a motion is rarely granted because it is viewed with disfavor. See Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997) (quoting Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982)).

3

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)(citing Fed.R.Civ.P. 8). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In considering a Rule 12(b)(6) motion, the Court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" See Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit, 369 F.3d 464 (5th Cir. 2004) (quoting Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999)). Thus, the Court "should not dismiss [a] claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that [it] could prove consistent with the allegations in the complaint." Jones v. Greninger, 188 F.3d at 324. But, in deciding whether dismissal is warranted, the Court will not accept conclusory allegations in the complaint as true. Kaiser, 677 F.2d at 1050. Indeed, the Court must first identify allegations that are conclusory and, thus, not entitled to the assumption of truth. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). A corollary is that legal conclusions "must be supported by factual allegations." Id. at 678. Assuming the veracity of the well-pleaded factual

4

allegations, the Court must then determine "whether they plausibly give rise to an entitlement to relief." Id. at 679.

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009) (quoting Iqbal, 556 U.S. at 678) (internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Twombly, 550 U.S. at 555 (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 678 (internal quotations omitted) (citing Twombly, 550 U.S. at 557). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'", thus, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do." Twombly, 550 U.S. at 555 (alteration in original) (citation omitted).

## II.

The Longshore and Harbor Worker's Compensation Act provides maritime workers with a method of recovery for workplace injuries. 33 U.S.C. §§ 901-950; Ne. Marine Terminal Co., Inc. v. Caputo, 432 U.S. 249, 257-65 (1977). To be eligible for coverage under the Act, a worker must meet both a situs and a status test. New Orleans Depot Services, Inc. v. DOWCP, 718 F.3d 384, 388-89 (5th Cir. 2013) (en banc) (citations omitted). Here, it is undisputed that, on the pleadings, Duvall satisfies both the situs test (because his alleged injury occurred on Back Levee Canal, a U.S. navigable water) and the status test (because Duvall alleges that he was loading equipment onto the T.T.I-1 at the time of his injury). Thus, based on the allegations of his complaint, Duvall is eligible to recover under the LHWCA.

Once an injured worker meets the situs and status tests for coverage, the Act provides two types of coverage: (1) compensation benefits from his employer under Section 904; and (2) recovery for vessel negligence under Section 905(b). 33 U.S.C. §§ 904, 905(b). For the purposes of BOPCO's motions, Duvall asserts only vessel negligence against BOPCO.  Notably, the statute provides that "[t]he remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter." 33 U.S.C. § 905(b).  The scope of vessel negligence

6

under Section 905(b) is limited to the breach of specific duties described by the U.S. Supreme Court in Scindia Steam Navigation Co., Ltd. v. De Los Santos, 451 U.S. 156 (1981). Courts have construed Scindia to provide three general duties that vessels owe to longshoremen: "(1) the 'turnover duty,' relating to the condition of the ship upon the commencement of stevedoring operations; 2) the duty to prevent injuries to longshoremen in areas remaining under the 'active control' of the vessel; and 3) the 'duty to intervene.'" Moore v. M/V ANGELA, 353 F.3d 376, 380 (5th Cir. 2003) (citing Howlett v. Birkdale Shipping Co., 512 U.S. 92, 98 (1994)).

The turnover duty has two parts. First, a vessel owner has a duty to exercise "ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety." Scindia, 451 U.S. at 167. Second, a vessel owner has a duty to warn "the stevedore of any hazards on the ship or with respect to its equipment that are known to the vessel or should be known to it in the exercise of reasonable care." Id.   This duty is narrow, however, and does not "include dangers which are either: (1) open and obvious or (2) dangers a reasonably competent stevedore should anticipate encountering." Kirksey v. Tonghai Mar., 535 F.3d 388, 392 (5th Cir. 2008) (citing Howlett, 512 U.S. at 100-01).

7

Once the vessel has been turned over to the stevedore, the vessel owner has no general duty to supervise or inspect the operations; instead, the vessel owner may rely on the stevedore to fulfill its statutory duty under 33 U.S.C. § 941 to provide a reasonably safe work environment for the longshoremen. Scindia, 451 U.S. at 168-69. Hence, "the shipowner is not liable to the longshoremen for injuries caused by dangers unknown to the owner and about which he had no duty to inform himself." Id. at 172. Thus, once the vessel owner turns over the ship to the stevedore, only the duty to control and the duty to intervene apply. Id. at 167, 175. Under the duty to control, "a shipowner must exercise reasonable care to prevent injuries to longshoremen in areas that remain under the active control of the vessel." Howlett, 512 U.S. at 98. The duty to intervene arises when a vessel owner has actual knowledge of a hazard and that the stevedore, in the exercise of "obviously improvident" judgment, intends to continue operations despite the hazard. Pimental v. LTD Canadian Pac. Bul, 965 F.2d 13, 15 (5th Cir. 1992). In other words, if a hazard develops during the stevedore's operations and "if the shipowner should anticipate that the stevedore will not or cannot correct the danger and that the longshoremen cannot avoid it, then the shipowner's duty is triggered to take steps, reasonable in the circumstances, to eliminate or neutralize the hazard." Scindia, 451 U.S. at 175.

Scindia and its progeny involve the scenario of an injured longshoreman in the employ of a stevedore, but the same

8

principles apply to cases like the instant action that involve harborworkers in the employ non-stevedore contractors working aboard a vessel. <u>Levene v. Pintail Enterprises</u>BB, 943 F.2d 528 (5th Cir. 1991); <u>Hill v. Texaco, Inc.</u>, 674 F.2d 447, 451 (5th Cir. 1982); <u>Aquilar v. Bollinger Shipyards, Inc.</u>, 833 F. Supp. 2d 582, 591 (E.D. La. 2011).

III.

BOPCO seeks dismissal of the following claims on the ground that they are outside the scope of the three <u>Scindia</u> duties under Section 905(b): (1) failure to provide safe equipment for raising and lowering of barge legs; (2) breach of legally imposed duty of reasonable care in failing to warn plaintiff or employer of hidden defect; (3) breach of the duty to provide a safe work place to work; and (4) breach of duty of reasonable care to correct hazardous condition or defect.

A.   Failure to Provide Safe Equipment

First, BOPCO seeks dismissal of plaintiff's claim that BOPCO failed to provide safe equipment for raising and lowering barge legs, arguing that the turnover duty is a narrow duty that does not include a generalized duty to provide safe equipment.   BOPCO submits that its actual turnover duty is already encompassed within causes of action asserted by Duvall, specifically the violation of the turnover duty and the failure to exercise ordinary care to turn over the ship and equipment; BOPCO does not dispute that Duvall has stated a claim under these two duties.

BOPCO maintains that the limits of the turnover duty are established in Kirksey v. Tonghai Mar., which provides that a vessel owner "owes a duty to exercise ordinary care under the circumstances to turn over the ship and its equipment in such condition that an expert stevedore can carry on stevedoring operations with reasonable safety." 535 F.3d 388, 392 (5th Cir. 2008). The Fifth Circuit's opinion in Kirksey, however, is not inconsistent with a duty to provide safe equipment for raising and lowering barge legs. Insofar as the plaintiff alleges that BOPCO breached its turnover duty in failing to turn over the ship and its equipment in such condition that a stevedore or non-stevedore contractor can carry on operations with reasonable safety, the plaintiff has stated a claim consistent with Scindia.

In Scindia, the Court clearly established that the condition of specific equipment on a vessel – like the alleged defects in the raising and lowering barge legs here – may give rise to a claim that the vessel owner breached its turnover duty. There, the Court provided that a shipowner "has a duty with respect to the condition of the ship's *gear, equipment, tools, and work space to be used in the stevedoring operations*." Scindia Steam Nav. Co., Ltd. v. De Los Santos, 451 U.S. 156, 167 (1981)(emphasis added); see also Howlett v. Birkdale Shipping Co., S.A., 512 U.S. 92, 98-99 (1994) (citing Bjaranson v. Botelho Shipping Corp., Manila, 873 F.2d 1204 (9th Cir. 1989) (claim for breach of turnover duty because of no handhold on coaming ladder); Griffith v. Wheeling-Pittsburgh Steel

10

Corp., 610 F.2d 116 (3rd Cir. 1979) (claim for breach of turnover duty because of defective hatch covers), remanded, 451 U.S. 965, 101, reinstated, 657 F.2d 25 (3rd Cir. 1981)); Scalafani v. Moore McCormack Lines, Inc., 388 F. Supp. 897 (E.D. N.Y.) (claim for breach of turnover duty because there was no handrail on platform linking gangway and deck)).   Insofar as the plaintiff has alleged that BOPCO breached its turnover duty in failing to turn over the equipment in such a condition that an expert stevedore can carry on the stevedoring operation with reasonable safety, he states a claim for relief that is plausible on its face.

   B.   Failure to Warn of Hidden Defect

   Next, BOPCO seeks dismissal of plaintiff's claim "for breach of a legally imposed duty to exercise reasonable care in failing to warn plaintiff or his employer of a hidden defect."   BOPCO contends that the duty of reasonable care is not to warn of hidden defects, but instead it is the standard for determining defects of which the vessel owner should have been aware. See Helaire v. Mobil Oil Co., 709 F.2d 1031, 1036 (5th Cir. 1983)("the owner has a duty to warn the longshoremen of *hidden defects that would be known to the shipowner in the exercise of reasonable care*") (emphasis added). The plaintiff agrees.   The plaintiff explains, however, that his claim instead is that BOPCO failed to exercise reasonable care in discovering the hidden defect.   BOPCO is correct that the plaintiff cannot amend his complaint by his arguments in opposition to a motion to dismiss.

11

The plaintiff has had ample opportunities amend his complaint. And it is conceded that the plaintiff has already stated general claims for BOPCO's alleged breach of its Scindia duties, including that BOPCO failed to warn the plaintiff of hidden dangers in the equipment used for raising and lowering the barge legs.   The Court finds that the plaintiff has already alleged that BOPCO breached its Scindia duty to warn, and the plaintiff's poorly worded claim that BOPCO "breach[ed] [its] legally imposed duty to exercise reasonable care in failing to warn plaintiff or his employer of a hidden defect, resulting in the incident and injuries referred to herein" will be dismissed for failure to state a claim.   The Court will apply the appropriate legal standard if the parties present the Court with merits-based motion practice.[1]

C.   Failure to Provide Safe Workplace

Third, BOPCO seeks to dismiss the plaintiff's claim that BOPCO failed to provide a reasonably safe place to work. BOPCO argues for dismissal because Scindia does not anticipate that a vessel owner has a duty to provide a longshoreman with a reasonably safe place to work. In Scindia, the Supreme Court provided:

> As a general matter, *the shipowner may rely on the stevedore to avoid exposing the longshoremen to unreasonable hazards*. Section 41 of the Act, 33 U.S.C. § 941, requires the stevedore, the longshoremen's employer,

___

[1] If a shipowner "fails at least to warn the stevedore of hidden danger which was known to the shipowner, or *should have been known to him in the exercise of reasonable care*, he is liable if his negligence causes injury to a longshoreman.  Scindia, 451 U.S. at 157 (emphasis added).

to provide a "reasonably safe" place to work and to take such safeguards with respect to equipment and working conditions as the Secretary of Labor may determine to be necessary to avoid injury to longshoremen. *The ship is not the common employer of the longshoremen and owes no such statutory duty to them.*

Scindia, 451 U.S. at 170 (emphasis added).

The plaintiff responds that, in the quote above, the Court only qualified the vessel owner's duties after turning over the vessel, whereas, here, the workplace was allegedly unsafe at the time the shipowner turned over the vessel. But the plaintiff's reliance on the turnover duty is misplaced because the duty to provide a "reasonably safe workplace" only arises once longshoremen or non-stevedore harborworkers are on a ship – this is because, conceptually, the vessel does not become a workplace until workers are on the ship. In other words, the jurisprudence only discusses the duty to provide a reasonably safe workplace as it applies to the employers of longshoremen and harborworkers once the ship has already been turned over in the context where the vessel owner has already turned over the vessel. See, e.g., Scindia, 451 U.S. at 170 ("Section 41 of the Act, 33 U.S.C. § 941, requires the stevedore, the longshoremen's employer, to provide a 'reasonably safe' place to work'"); McCuller v. Nautical Ventures, L.L.C., 434 Fed.App'x 408, 413 (5th Cir. 2011) (discussing "the stevedore's duty to provide a reasonably safe workplace"); Adams v. S/S P.S. PALIOS, No. 90-2679, 1990 WL 142022, at *1 (E.D. La. Sept. 25, 1990) (emphasis added) (*"[I]t is the employer's duty to provide the*

*longshoremen with a safe place to work . . . the vessel owes no such duty to the longshoreman*"); <u>Bruley v. Daiichi Chuo Kisea Kaisha</u>, CIV.A. 86-48, 1986 WL 14423, at \*1 (E.D. La. Dec. 11, 1986) ("[T]he Court [in <u>Scindia</u>] rejected the contention that a shipowner has a nondelegable duty to provide the longshoreman with a safe place to work"); <u>see also</u> <u>Randolph v. Laeisz</u>, 896 F.2d 964, 970 (5th Cir. 1990) ("The basic principle which emerges from <u>Scindia</u> is that the primary responsibility for the safety of the longshoremen rests upon the stevedore") (citing <u>Masinter v. Tenneco Oil Company</u>, 867 F.2d 892, 896 (5th Cir. 1989); <u>Wild v. Lykes Bros. S.S. Corp.</u>, 734 F.2d 1124, 1126 (5th Cir. 1984); <u>Helaire v. Mobil Oil Co.</u>, 709 F.2d 1031, 1036 (5th Cir. 1983)). The jurisprudence clearly establishes that the duty to provide a reasonably safe workplace applies not to vessel owners but to stevedores and non-stevedore independent contractors who employ longshoremen and harborworkers once vessel owner has turned over the ship.

The question of whether there was a reasonably safe workplace does potentially implicate the vessel owner's duty to intervene. Since the vessel owner may rely on stevedores and non-stevedore contractors to provide a reasonably safe work environment for their employees, a vessel owner has no duty to supervise or inspect the operations once the vessel has been turned over to the stevedore. <u>Scindia</u>, 451 U.S. at 168-69. The aptly-named duty to intervene, however, arises when a vessel owner, after turning over the vessel, obtains actual knowledge of a hazard or risk to the workers on the

vessel and that the stevedore or non-stevedore contractor, in the exercise of "obviously improvident" judgment, intends to continue operations despite the hazard. <u>Pimental v. LTD Canadian Pac. Bul</u>, 965 F.2d 13, 15 (5th Cir. 1992).  More specifically, to trigger this duty, a two-prong test must be satisfied: (1) the vessel owner must have actual knowledge of "an unreasonable risk of harm," and (2) the vessel owner must have "actual knowledge that it cannot rely on the stevedore to protect its employees and that if unremedied the condition pose[s] a serious risk of injury." <u>Randolph v. Laeisz</u>, 896 F.2d 964, 971 (5th Cir. 1990) (citing <u>Woods v. Sammisa Co., Ltd.</u>, 873 F.2d 842, 847 (5th Cir. 1989); <u>Lormand v. Superior Oil Co.</u>, 845 F.2d 536, 542 (5th Cir. 1987)).

Here, however, the plaintiff alleges that BOPCO failed to provide a reasonably safe workplace, and that is not a theory upon which relief may be granted.  The plaintiff fails to allege facts sufficient to support a finding that BOPCO violated its duty to intervene, and, in fact, expressly avers that his argument here is not that the vessel owner breached its duty to intervene.[2]  As such, the plaintiff has failed to state a plausible claim for relief, and BOPCO's motion to dismiss the claim that BOPCO failed to provide a reasonably safe workplace must be granted.

---

[2] <u>See</u> Memorandum in Opposition to BOPCO's Partial Motion to Dismiss, 10/02/15, p.8 ("[P]laintiff in pleading this cause of action is referring again to the turnover duty . . . .  However, BOPCO's argument is based on the duty to intervene").

D.   Breach of Duty to Correct Hazardous Condition or Defect

Finally, BOPCO seeks to dismiss the plaintiff's claim that it breached its legally imposed duty of reasonable care to correct a hazardous condition or hidden defect.  BOPCO maintains that none of the Scindia duties impose a duty of reasonable care to correct hazardous conditions.   The plaintiff responds that the duty to intervene requires shipowners to correct hazardous conditions and, thus, maintains he has pled a plausible cause of action.  The Court disagrees.

The duty to intervene requires vessel owners to correct hazardous conditions under certain circumstances, but there is no so-called "legally imposed duty" to exercise reasonable care in correcting hazardous conditions.  As noted above, a vessel owner may rely on stevedores and non-stevedore contractors to provide a reasonably safe work environment for their employees.  Scindia, 451 U.S. at 168-69. Thus, a vessel owner has no general duty to supervise or inspect the operations once the vessel has been turned over to the stevedore. Id.  The duty to intervene, however, arises when a vessel owner has actual knowledge of a hazard or risk to the workers on the vessel and that the stevedore or non-stevedore contractor, in the "exercise of improvident judgment," intends to continue operations despite the hazard.  Pimental v. LTD Canadian Pac. Bul, 965 F.2d 13, 15 (5th Cir. 1992).  The Fifth Circuit has established that a vessel owner has a duty to intervene only if: (1) the vessel owner has actual knowledge of "an unreasonable risk

16

of harm," and (2) the vessel owner has "actual knowledge that it cannot rely on the stevedore to protect its employees and that if unremedied the condition pose[s] a serious risk of injury." Randolph v. Laeisz, 896 F.2d 964, 971 (5th Cir. 1990) (citing Woods v. Sammisa Co., Ltd., 873 F.2d 842, 847 (5th Cir. 1989); Lormand v. Superior Oil Co., 845 F.2d 536, 542 (5th Cir. 1987)).

The plaintiff offers no support for his assertion that a reasonable care standard applies to the duty to intervene. The plaintiff's cause of action for "breach of a legally imposed duty to exercise reasonable care in failing to correct a hazardous condition or hidden defect in the vessel equipment" must be dismissed.[3]

*   *   *

Accordingly, BOPCO's partial motions to dismiss are hereby GRANTED in part (the plaintiff's claims for breach of legally imposed duty of reasonable care in failing to warn plaintiff or employer of hidden defect, breach of the duty to provide a safe work place to work, and breach of duty of reasonable care to correct hazardous condition or defect are hereby dismissed) and DENIED in part (the plaintiff may pursue his claim for failure to provide safe equipment for raising and lowering of barge legs insofar as the plaintiff alleges that BOPCO breached its turnover duty in failing to turn over the ship and its equipment in such

---

[3] BOPCO notes that the plaintiff has already alleged a cause of action under the duty to intervene and it does not challenge the technical sufficiency of that claim.

condition that a stevedore or non-stevedore contractor can carry on

operations with reasonable safety).[4]

New Orleans, Louisiana, November <u>24</u>, 2015

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

_____

[4]The Court notes that the parties agree that the plaintiff's claims against BOPCO are limited, and that the plaintiff has alleged claims for breach of each of the <u>Scindia</u> duties.  But the plaintiff nevertheless insisted on styling its claims to appear to be beyond the scope of <u>Scindia</u>, by stating claims in addition to the <u>Scindia</u> duties, necessitating BOPCO's hyper-technical motions to dismiss. Counsel should be mindful of 28 U.S.C. § 1927.