UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MICHAEL DUVALL                                                    CIVIL ACTION

VERSUS                                                            NO. 15-2404

BOPCO, L.P. ET AL.                                                SECTION "F" (2)

## ORDER AND REASONS ON MOTION

This is a maritime personal injury case in which plaintiff alleges that "his right hand was crushed" during the operation of "spud leg" equipment on a barge. Record Doc. No. 1 (Complaint at ¶ IV). One of his causes of action is asserted against the owner of the barge pursuant to 33 U.S.C. § 905(b). Plaintiff's Motion to Compel Pursuant to Rule 37, Record Doc. No. 112, is currently pending before me. Having already conducted one inspection of the barge in which plaintiff's retained expert participated pursuant to Fed. R. Civ. P. 34, Record Doc. No. 114-1, plaintiff now seeks in this motion an order requiring the barge owner to permit a second inspection of the barge and its equipment. This inspection will involve extensive related testing conducted and directed principally by plaintiff's retained expert, which includes a lengthy and involved "protocol" for operation of defendant's equipment, requiring about two dozen separate operational and testing steps.

Defendant BOPCO, L.P., the barge owner, filed a timely opposition memorandum, Record Doc. No. 114, and plaintiff was granted leave to reply. Record Doc. Nos. 116-18. The barge owner has objected to only three particular steps of plaintiff's proposed protocol. The three disputed steps include loosening hose fittings to cause engine fluid to leak, starting the engine and lifting the equipment to note the location of the leakage, Step 18;

performing a specified "brake testing sequence," Step 22; and loosening fittings, degassing and surveying a tank, Step 25(b).  Defendant argues that these three steps are hazardous and likely to damage its equipment; that plaintiff's expert's alleged need for this testing can be accomplished by less burdensome means; and that these three steps are unlikely to provide information that outweighs their hazard, burden and usefulness to the case.

Having considered the record, the applicable law and the written submissions of counsel, IT IS ORDERED that plaintiff's motion is DENIED for the following reasons.

Fed. R. Civ. P. 34(a)(2) permits a party to serve upon another party "a request <u>within the scope of Rule 26(b)</u>: . . . to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, <u>test</u>, or sample the property or any designated object or operation on it."  (Emphasis added).  The "scope of Rule 26(b)" includes <u>both</u> relevance of the proposed inspection and related activities to claims or defenses in the case <u>and</u> proportionality, requiring consideration of a number of factors, including whether "the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  In addition, a Rule 34 request "must specify a <u>reasonable</u> time, place and manner for the inspection and for performing the related acts."  Fed. R. Civ. P. 34(b)(1)(B) (emphasis added).

> [W]here entry on land [with related testing and other activities] is sought, the court must balance the degree to which the proposed inspection will aid in the search for truth against the burdens and dangers created by the inspection. . . .  The mere fact that compliance with an inspection order will cause great labor and expense or even considerable hardship and possibility

>of injury to the business of the party from whom discovery is sought does not of itself require denial of the motion. Rule 26(c) speaks of "undue burden or expense" and discovery has normally been allowed unless the hardship is unreasonable in light of the benefits to be secured from the discovery. . . . The order . . . should be framed so as to cause as little inconvenience as possible to the parties.

C. Wright, A. Miller, M. Kane, R. Marcus and A. Steinman, 8B Federal Practice & Procedure § 2214 (3d ed.) (Westlaw 2016) (citing inter alia Belcher v. Bassett Furniture Indus., Inc., 588 F.2d 904 (4th Cir. 1978)). Rule 34

>necessarily vests in the district court a sound discretion, on objection, whether and within what limits and under what conditions inspection . . . should be ordered. It has been well said that this is "not, of course, an absolute discretion but one controlled and governed, not only by statutory enactments and the well-established rules of the common law, but also by considerations of policy and of necessity, propriety and expediency in the particular case at hand."

Id. § 2215 (quoting United States v. Kohler Co., 9 F.R.D. 289, 291 (E.D. Pa. 1949)).

Considering the foregoing standards, I find that Steps 18, 22 and 25(b) of plaintiff's proposed inspection and testing protocol are unreasonable and exceed the proportionality component of the scope of Rule 26(b) discovery and a permissible Rule 34 inspection. These steps are unduly burdensome, hazardous and disruptive of defendant's operations in a manner that outweighs their likely benefit to the case.

As noted above, the proportionality restriction applies to this discovery, regardless whether it is deemed to emanate from the practically identical provisions of Fed. R. Civ. P. 26(b) as it existed on the date this suit was filed or today, through the rule's amendment that became effective on December 1, 2015. As to the particular elements of a Rule 26(b)

proportionality analysis, the focus and needs of this case are narrow, insofar as they relate to the equipment involved in the liability aspect of the case and the restricted legal basis for a shipowner's potential liability under Section 905(b). While defendant appears to have superior resources, it also appears that each side has been fully capable of retaining and using similarly qualified experts and devoting sufficient resources to this litigation, such that roughly equal access to relevant information concerning the subject equipment has occurred. Neither side has submitted any information concerning the amount in controversy. However, the nature of the claimed physical injuries indicates that, while the damages sought may be relatively large, this remains an ordinary personal injury case in which the anticipated amount in controversy cannot be classified as so enormous that the risks and burdens presented by the proposed testing and inspection steps are justified. On one hand, the condition and operation of the equipment is important to resolving liability issues in the case. On the other hand, the overall result of the Rule 34 inspection that has already been conducted and the undisputed components of the second inspection with related activities that is now being permitted, when coupled with the specialized knowledge and informational resources otherwise available to plaintiff's retained engineering expert, indicate that plaintiff has ample opportunity to obtain relevant information proportionally appropriate to the preparation of his case. Under these circumstances, I find that the three disputed steps of plaintiff's proposed Rule 34 discovery are out of proportion to the needs of the case and that their risks and burden outweigh their likely benefit. Fed. R. Civ. P. 26(b)(1) and (2)(C).

Not surprisingly, defendant's expert engineer and plaintiff's expert engineer disagree about the necessity of the three disputed steps. In reaching my conclusion, I assign controlling weight to the persuasive affidavits of defendant's expert engineer and production manager attached to defendant's opposition memorandum. Record Doc. Nos. 114-2 and 114-4. Specifically, defendant's expert engineer states under oath that the proposed steps "are not necessary to confirm the condition of the subject equipment and will not add useful information beyond the functional tests" that defendant has already agreed to permit. Record Doc. No. 114-2 at p. 2. The affidavit persuasively explains the basis for this conclusion and specifically identifies the risks posed by those steps, including "[d]amage to hoses and fittings; . . . [i]ntroduction of hydraulic leaks; [r]eplacement parts may not be readily available to make repairs; [w]ill likely result in unnecessary downtime of the barge while parts are secured and repairs are made. . . . There is also a risk of damaging brake valve fasteners while attempting to access the internal components." Id. at pp. 2-3. Defendant's production manager states under oath that any damage caused by the inspection that renders the barge unuseable will cause defendant to "incur lost revenue of approximately $5,000 per day." Record Doc. No. 114-4.

I find the sworn statements contained in the affidavits submitted by defendant more convincing concerning the factors relevant to proportionality analysis than the deposition testimony of the supervisor, deckhand and tugboat captain offered by plaintiff. Record Doc. Nos. 118-2. Plaintiff offers no evidence to refute defendant's affidavits concerning

the risks posed by his expert's proposed testing, instead offering only the reply briefing of his counsel that plaintiff's retained experts "will have certified replacement parts on hand to remedy any such issue," hopefully "within one day." Record Doc. No. 118 at pp. 8-9. I also do not accept the unverified, speculative,[1] conclusory, unreasonably demanding[2] and inadequately explained email of plaintiff's retained engineering expert, which plaintiff has submitted in support of his request to include these steps in his testing protocol. Record Doc. No. 118-3.

The disputed steps are part of an extensive inspection and testing protocol that apparently is the brainchild of plaintiff's retained expert. This is the same expert who has already participated in one inspection of the barge, which plaintiff's counsel himself has described as "quite formal," Record Doc. No. 14-1, and who is now being permitted to conduct a second inspection, including a detailed testing protocol directed by him that includes an additional two dozen or so agreed-upon steps. The parties' submissions attached to these motion papers establish that a trove of reference and informational materials is already available to plaintiff's expert, in addition to his presumed own

---

[1] Plaintiff's engineer asserts that defendant's engineer "assumes that the hydraulic motor is a standard motor having standard rotation and a case drain that is in the customary location," then speculates: "If the winch has an oddball motor or case drain location, such a deduction of flow direction would provide incorrect information and would lead to incorrect conclusions." Record Doc. No. 118-3. No evidence has been presented to suggest that the subject equipment or case drain location is "oddball" in any way.

[2] "If I am not allowed to obtain positive confirmation of the flow direction of the winch while aboard the vessel, then I must insist that the winch be removed and brought to an appropriate facility for testing and disassembly." Record Doc. No. 118-3.

- 6 -

"knowledge, skill, experience, training or education," Fed. R. Evid. 702, from which the expert should be able to formulate and deliver his opinions. This is a record of an "ample opportunity to obtain" proportionally appropriate information in support of the expert's work. Fed. R. Civ. P. 26(b)(2)(C)(ii).

Plaintiff argues that the full protocol demanded by his expert, including the three disputed steps, is "crucial information" to the search for "[t]he truth sought to be revealed through the inspection." Record Doc. No. 118 at p. 10. However, in a separate but closely related context, the United States Supreme Court has stated:

> [T]here are important differences between the quest for truth in the courtroom and the quest for truth in the laboratory. Scientific conclusions are subject to perpetual revision. Law, on the other hand, must resolve disputes finally and quickly. The scientific project is advanced by broad and wide-ranging consideration of a multitude of hypotheses, for those that are incorrect will eventually be shown to be so, and that in itself is an advance. Conjectures that are probably wrong are of little use, however, in the project of reaching a quick, final, and binding legal judgment–often of great consequence–about a particular set of events in the past. We recognize that, in practice, a gatekeeping role for the judge, no matter how flexible, inevitably on occasion will prevent the jury from learning of authentic insights and innovations. That, nevertheless, is the balance that is struck by Rules of Evidence designed not for the exhaustive search for cosmic understanding but for the particularized resolution of legal disputes.

Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 596-97 (1993) (footnote omitted). Like the Federal Rules of Evidence, the Federal Rules of Civil Procedure, through the proportionality requirement of Rule 26(b), require that the same balance must be struck in discovery as well as at trial.

Accordingly, for all of the foregoing reasons, plaintiff's motion is DENIED. The planned second Rule 34 inspection of the barge and its equipment, with related activities, must proceed as scheduled and in the manner already substantially agreed upon, but without the three steps in dispute in this motion.

New Orleans, Louisiana, this \_\_\_\_1st\_\_\_ day of April, 2016.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE